UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

IN RE:  CASE NO. 07-40211-LMK

ROBERT CHARLES WALLERIUS    CHAPTER 11

Debtor.
_____/

## MOTION TO DISMISS BY CREDITORS, M'WARE CORP., JAMES NORTON, AND THE RESOURCE MANAGEMENT GROUPS, INC.

Creditors, M'Ware Corp., James Norton and The Resource Management Groups, Inc. (hereinafter referred to as "Movants"), by and through their undersigned counsel, file this Motion to Dismiss the instant case. In support thereof, Movants state:

### RELEVANT FACTS

1. This matter relates to the above-styled bankruptcy petition filed in the Bankruptcy Court of the Northern District of Florida under Chapter 11 of the Bankruptcy Code.

2. Movants are unsecured creditors and parties in interest to this Chapter 11 case.

3. Movants attempts to examine the Debtor by way of a 2004 examination have been ongoing since May, 2008 and have been previously frustrated by the actions and inaction of the Debtor and his willful refusal to obey the Orders of this Court requiring his appearance at a 2004 examination and to produce documents relating to his financial condition.

4. On May 7, 9, and 16, 2008, the undersigned attempted by email to coordinate a mutually agreeable date and time for an examination of the Debtor with counsel for the Debtor. On May 19, 2008, counsel for the Debtor informed the undersigned in writing that his client took the position that Movants were not entitled to take his 2004 examination because, among other

1

reasons, the claims of the Movants were disputed by the Debtor. Counsel for the Debtor therefore, did not and could not provide any dates of availability due to the Debtor's refusal to provide the same.

5. On May 22, 2008 (Docket No. 189), the undersigned filed the first motion for 2004 examination and an Order (Docket No. 191) was entered the following date, unilaterally setting the 2004 examination on June 3, 2008. The Court's Order directed the Debtor to appear for an examination and to produce certain documents referenced as "Exhibit A" to Movant's Notice of 2004 examination at least 3 days prior to the examination.

6. On June 1, 2008, counsel for the Debtor indicated in an email to the undersigned that he had just received an email from the Debtor in which the Debtor indicated that he was not aware that he was to be examined on June 3, 2008, (despite being provided notice) and that although he was returning to Tallahassee on June 1, 2008, he would be unable to attend his 2004 examination due to the use of pain medications and high blood pressure. Counsel for the Debtor indicated in writing he and his client's desire to postpone the 2004 exam until the week following the Debtor's next medical procedure on his back that was scheduled for July 3, 2008. Further, counsel indicated in that June 1, 2008, email that the Debtor needed more time to gather the requested documents.

7. On June 2, 2008, the undersigned granted the Debtor a three week extension to produce the requested documents. This extension was granted in writing via email to counsel for the Debtor. The extension expired on June 23, 2008.

8. Throughout the remainder of June, the undersigned and counsel for the Debtor attempted to coordinate a mutually agreeable date in July to reset the 2004 exam of the Debtor,

without success. Finally, on July 2, 2008, after being unable to coordinate a mutually agreeable date, the undersigned indicated to counsel for the Debtor that he would unilaterally move to set another 2004 exam in early August, after the Debtor's counsel emailed him to advise that he could do so, but not after August 18, because counsel for the Debtor would be out of town at that time for one month per his notice of unavailability filed in this case (Docket No. 194).

9. On July 11, 2008, (Docket No. 206), Movants' motion to compel 2004 exam was filed and the Court entered its Order on July 16, 2008, (Docket No. 208), requiring the Debtor's attendance on August 1, 2008, and for the production of documents listed on "Exhibit A" to the Notice of Examination of Debtor. Per the Court's Order, those documents were to be produced at least **9 business days** before the 2004 examination, or July 21, 2008.

10. On July 22, 2008, the undersigned sent an email message to the Debtor's counsel inquiring regarding the whereabouts of the document production that was due the day before. That same day, Debtor's counsel informed the undersigned by email that the document production would be received the next day, July 23, 2008.

11. On Friday, July 25, 2008, the undersigned spoke with the Debtor's counsel by telephone to inquire regarding the whereabouts of the document production. Debtor's counsel advised he would contact his client, but stated that the Debtor was in New Jersey and that the production would not be made until the Debtor returned to Florida.

12. On Saturday, July 26, 2008, Debtor's counsel again informed the undersigned that the Debtor would not be able to produce the documents until he returned from New Jersey and added that he did not know when the Debtor would return to Florida.

13. Production of the documents requested in advance of the 2004 examination is essential to proper preparation for, and a meaningful examination of the Debtor regarding his ability to fund the proposed Plan in this case and otherwise continue this Chapter 11 case.

14. In "Exhibit A" to its Notice of Examination of Debtor, Movants requested several categories of documents–all of which Debtor's counsel had indicated had been assembled as early as July 22, 2008, due to the fact that Debtor's counsel indicated on that date that they would be produced to the undersigned on the next day; July 23, 2008.

15. Document request one of Movants to Debtor requested the Debtor's tax returns for the last seven years; 2001 to 2008. The Debtor produced returns for 2002 to 2007, but failed to produce a return for 2001 as ordered.

16. Document request two of Movants to Debtor requested copies of checks from Lewis Hunter, the alleged benefactor of the Debtor for living expenses, to the Debtor. The Debtor produced no documents in response to this request.

17. Document request three of Movants to Debtor requested pay stubs or evidence of payments to the Debtor from PayCheckPC. The Debtor produced no documents in response to this request.[1]

18. Document request nine of Movants to Debtor requested a copy of the bill(s) for attorneys' fees and costs issued by Steven Lustig, Esq. in the amount of $111,637.50. Lustig is a shareholder in PayCheck PC and a licensed Florida attorney. The Debtor produced no attorney fee bills in response to this request, but instead attached Lustig's Proof of Claim filed in

---

[1] Movants assign significance to this in that Debtor's counsel indicated to the Court on August 14, 2008, at the hearing on Movants' Motion to Compel that PayCheckPC was generating revenue as of that date.

this case along with the attachment thereto which is a vague and cursory attorney fee bill showing no detail or the rates being charged and indicates no total amount due. A copy of the Proof of Claim of Lustig that was produced is attached hereto as "Exhibit One" for the Court's reference.

19. Document request thirteen of Movants to Debtor requested copies of any and all stock ledgers maintained at any time by UFOL Corporation, PayCheckPC Corporation, PayCheckPC Marketing Corporation, or any company of a similar name, or any of their subsidiaries, affiliates, parent or holding companies that would demonstrate the names and interests of all stockholders in said entities. The Debtor produced no stock ledgers in response to this request. Instead, Debtor only provided copies of stock certificates for stock issued to certain parties; not a ledger that would indicate whether Debtor's production of stock certificates was complete.

20. Document request fourteen of Movants to Debtor requested copies of all loan agreements between any person or entity and PayCheckPC Corporation, to whom a debt is owed by PayCheckPC Corporation as outlined on PayCheckPC's 2007 Federal Income Tax Return at page 4, line 19. The Debtor produced no documents in response to this request.

21. Document request fifteen of Movants to Debtor requested copies of all instruments noted at page 4, line 20 of PayCheckPC's 2007 Federal Income Tax Return. This line item referred to "mortgages, notes, bonds payable in more than 1 year." The Debtor produced no documents in response to this request.

22. As outlined in the U.S. Trustee's Motion to Dismiss (Docket No. 231), the Debtor has failed to file monthly financial reports for June and July, 2008 and as of the filing of this pleading the August monthly report is likewise unfiled.

23.     In addition, Movants have reason to question the veracity of the monthly reports that have been filed in this case. In its production to Movants pursuant to the Court's Order Compelling Production of Documents, the Debtor produced detailed American Express statements for charges allocated to "Robert Wallerius" for October and December, 2007 and January to March, 2008. A copy of those statements is attached hereto as "Exhibit Two".

24.     The October, 2007, American Express statement shows the Debtor had charges totaling $13,691.88 and $8,000.00 in payments were made. In that same month, a $430.00 charge or payment was made to Steven Lustig, an unsecured creditor in this case and attorney for the Debtor, on October 29, 2007. The Debtor's monthly report for that month showed no deposits, a beginning balance in the DIP account of $135.15 and an ending balance of $77.15.

25.     The December, 2007, American Express statement shows the Debtor had charges totaling $11,112.44 and no payments posted to the account. On December 28, 2007, the Debtor's statement indicates a $130.00 payment was made to Steven Lustig. The Debtor's monthly report for that month showed deposits of $727.40, a beginning balance in the DIP account of $186.89 and an ending balance of $252.64.

26.     The January, 2008, American Express statement shows the Debtor had charges totaling $7,758.07 and a payment of $3,000.00 posted to the account. On January 10, 2008, the Debtor's statement indicates a $117.00 payment was made to Steven Lustig. The Debtor's monthly report for that month showed deposits of $302.68, a beginning balance in the DIP account of $252.64 and an ending balance of $293.33.

27.     The February, 2008, American Express statement shows the Debtor had charges totaling $2,189.15 and a payment of $4,606.36 posted to the account. The Debtor's monthly

report for that month showed deposits of $1,055.00, a beginning balance in the DIP account of $293.33 and an ending balance of $238.91.

28.  Generally, the monthly reports filed by the Debtor in this case show income of approximately, $2,000.00-$3,000.00 per month with similar expenses resulting in cash on hand at month end that is minimal.

## ARGUMENT AND MEMORANDUM OF LAW

29.  11 U.S.C. § 1112(b)(4) provides, in relevant part that:

For the purposes of this subsection, the term "cause" includes:

- (A) .... "the absence of a reasonable likelihood of rehabilitation";
- (B)  gross mismanagement of the estate;
- (D)  unauthorized use of cash collateral substantially harmful to 1 or more creditors;
- (E)  failure to comply with an order of the Court;
- (F)  unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
- (M)  inability to effectuate a substantial consummation of a confirmed plan.

30.  Based on the monthly operating reports filed, the Court should dismiss this proceeding pursuant to 11 U.S.C. § 1112(b)(4)(A) and (M), as those reports indicate no significant income to the Debtor from PayCheckPC and the thus, the Debtor has no ability to effectuate a Plan.

31.  The Debtor has failed to file monthly operating reports as noted above which is cause for dismissal pursuant to11 U.S.C. § 1112(b)(4)(F).

32.  No business expenses have been reported by the Debtor on any monthly reports despite many charges on the American Express statements that appear to be reportable as such.

Further, the charges and large payments reflected on the American Express statements produced do not square with the monthly reports filed by the Debtor in this case. This is cause for dismissal pursuant to 11 U.S.C. § 1112(b)(4)(B), (D) and (F).

33. The Debtor has made numerous payment to Steven Lustig, his counsel and an unsecured Creditor in this case. Lustig is an attorney and no application has been made by the Debtor to employ and compensate Lustig in any way and no order has been entered by the Court authorizing compensation to Lustig. This is cause for dismissal pursuant to 11 U.S.C. § 1112(b)(4)(B) and (D).

34. Finally, despite being informed on July 22, 2008, that the Debtor possessed and would produce all documents to the undersigned on July 23, 2008, the Debtor has failed to produce many documents (outlined above) as ordered by the Court (Docket No. 224). This is cause for dismissal pursuant to 11 U.S.C. § 1112(b)(4)(E).

WHEREFORE, Movants respectfully request that this Court dismiss this case and bar the Debtor from filing a second petition in any bankruptcy court in the United States for a period of 180 days or such other period of time the Court deems proper under the circumstances pursuant to 11 U.S.C. § 109(g).

/s/ Chad D. Heckman
JAMES E. SORENSON (Fla. Bar #0086525),
D. TYLER VAN LEUVEN (Fla. Bar #0178705),
CHAD D. HECKMAN (Fla. Bar #526029), of
Williams, Gautier, Gwynn, DeLoach & Sorenson, P.A.
Post Office Box 4128
Tallahassee, Florida 32315-4128
Telephone (850) 386-3300
Facsimile (850) 205-4755
Attorneys for Creditor

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that copies of the foregoing were served by electronic means or first class U.S. mail to Marlow V. White, P.O. Box 1050, Tallahassee, FL 32302-1050, Attorney for Debtor, usual place of business, Robert Charles Wallerius, 3084 McCord Blvd, Tallahassee, FL 32303, Debtor, usual place of abode, and Jason H. Egan, Esq. 110 E. Park Avenue, Ste. 128, Tallahassee, FL 32301, usual place of business, Office of the U.S. Trustee, on this 22 day of September, 2008.

                                           /s/ Chad D. Heckman
                                           Attorney